[Cite as *State v. Abaev*, 2025-Ohio-1108.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Michael D. Hess, J. |
| | : | Hon. Jason P. Smith, J. |
| | : | |
| | : | |
| -vs- | : | Judges Hess and Smith |
| | : | Sitting by Assignment by the |
| | : | Supreme Court of Ohio |
| | : | |
| GAYRAT ABAEV | : | Case No.  24 CAC 040019 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDINGS:        Appeal from the Municipal Court
                                 Case No. 23 TRC 07423

JUDGMENT:                        Affirmed

DATE OF JUDGMENT ENTRY:          March 28, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

TYLER A. SANDERS                          APRIL F. CAMPBELL
Assistant Prosecutor                      Campbell Law, LLC
70 North Union Street                     545 Metro Place South, Suite 100
Delaware, OH 43015                        Dublin, OH 43017

*Hess, J.,*

**{¶1}** Defendant-appellant Gayrat Abaev appeals the March 25, 2024 Final Judgment Entry entered by the Delaware Municipal Court, in which the court convicted and sentenced him, following acceptance of his no contest plea, of one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI").[1]  Plaintiff-appellee is the State of Ohio.

FACTS AND PROCEDURAL HISTORY

**{¶2}** On October 17, 2023, Abaev was cited for: (1) OVI in violation of R.C. 4511.19(A)(1)(a); (2) OVI in violation of R.C. 4511.19(A)(1)(d); (3) a marked lanes violation under R.C. 4511.33; (4) driving left of center in violation of R.C. 4511.25; and (5) a safety belt violation under R.C. 4513.263(B)(1).  Abaev initially pleaded not guilty.  He filed a motion to suppress evidence.

**{¶3}** At the suppression hearing, Trooper Steven Church of the Ohio State Highway Patrol testified that on October 17, 2023, around 1:30 a.m., he was traveling westbound on State Route 750 in Delaware County when he observed a vehicle traveling well under the speed limit.  The vehicle drove through a turn lane, onto the shoulder of the road, into the next turn lane.  The vehicle then made a wide right turn, travelling left of center in the process, and Trooper Church initiated a traffic stop.  It became apparent that the driver, Abaev, did not speak English, so Trooper Church retrieved his cell phone to communicate with Abaev, who said he spoke Uzbek, using Google Translate.

---

[1] The Final Judgment Entry states Abaev pleaded guilty, but this is a scrivener's error.  The transcript from the change of plea hearing indicates that Abaev entered a no contest plea, though during sentencing, he mistakenly said, "I do plead guilty."

**{¶4}** Trooper Church testified that Abaev seemed to understand the translation and gave appropriate answers to his questions. Trooper Church testified that when he asked Abaev where he lived, Abaev said Cincinnati, Ohio. Trooper Church testified Abaev said Sheetz before that, and Trooper Church did not think he lived there. Trooper Church acknowledged something got lost in translation and testified that "[i]t would be the English on my phone." Trooper Church saw Abaev had bloodshot and glassy eyes and detected a strong odor of alcohol coming from within the vehicle. On direct examination, Trooper Church did not mention an odor from Abaev's person, but on cross-examination, when asked, "You also noted that he smelled of what you said was alcohol, right?" Trooper Church testified, "Yes." Trooper Church asked Abaev how many alcoholic beverages he had consumed. Trooper Church testified, "His answer was one. I believe he said one pint, something in English that wasn't -- that I didn't quite understand." Trooper Church later testified Abaev said "one Teeler [phonetic]," and he did not understand what Abaev meant by "Keyla [phonetic]." He assumed that Google Translate accurately translated "alcoholic beverage" and that Abaev meant one beer. Trooper Church asked how long ago Abaev consumed it, and he said "four," which Trooper Church assumed meant four hours.

**{¶5}** Trooper Church asked Abaev to get out of the vehicle and performed a standardized field sobriety test—the horizontal gaze nystagmus or "HGN" test. Trooper Church explained that nystagmus is involuntary jerking of the eyes, that there are different causes of it, and that alcohol consumption will cause gaze nystagmus. He received training on the 2018 National Highway Traffic Safety Administration ("NHTSA") manual and had reviewed the revised 2023 manual, which made no substantive changes to the

administration of field sobriety tests. Trooper Church testified that during the HGN test, the tester should instruct the subject to keep their feet together, keep their hands at their side, keep their head still, follow the stimulus with only their eyes, and keep looking at the stimulus until the test is over. During the test, the tester positions a stimulus 12 to 15 inches away from the subject's face and moves it across the horizontal plane in front of the subject's eyes. While moving the stimulus, the tester looks for three clues of nystagmus in each eye—lack of smooth pursuit, nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees. The NHTSA manual states four clues are significant. Before the test, the tester should ask medical questions to rule out other types of nystagmus and/or medical conditions. The tester should also check for equal tracking in the eyes, resting nystagmus, and equal pupil size.

{¶6}    Trooper Church did not ask any medical questions but testified they do not change the mechanics of the test.  Trooper Church determined that Abaev did not have resting nystagmus, that his pupils were equal in size, and that there was no lack of equal tracking. He gave the test instructions required by the NHTSA manual using Google Translate and performed the test as he had been trained under the NHTSA manual.  He testified that Abaev did not appear to have any trouble understanding the instructions. He acknowledged one time Abaev turned his head, following the stimulus with his whole head, and Trooper Church did not know if this was because Abaev did not understand the instructions or just was not following them. Trooper Church testified that he clarified them, and Abaev was able to follow the instructions.  Trooper Church observed six clues, three in each eye.  He arrested Abaev for OVI based on his driving behavior, the odor of

alcohol, his bloodshot and glassy eyes, the HGN test, and "the admission to consuming." Abaev later submitted to a breath test which had a result of .129.

{¶7} The trial court admitted into evidence Session 8 of the 2018 and 2023 NHTSA DWI Detection and Standardized Field Sobriety Testing manuals and a copy of the breath test report. The court also admitted copies of audio-video footage of the traffic stop from Trooper Church's dash and body cameras. On the footage, shortly before the HGN test, Trooper Church appears to use his phone and shows it to Abaev, who appears to read the screen and says, "Yeah." Trooper Church holds a pen in front of Abaev's face and moves it back and forth. The footage shows no deviation from the HGN test instructions as Trooper Church moves the pen from the center of Abaev's face, to an area left of his face, though his eyes are not always visible. As Trooper Church moves the pen back past the center of Abaev's face to an area right of it, there is no deviation from the instructions except slight head movement. As Trooper Church moves the pen back past the center of Abaev's face to an area left of it, there is larger head movement. Trooper Church says, "Your head still." Trooper Church appears to touch his hands to the sides of his own face. Abaev nods, touches his hands to the sides of his face, and says, "Ok." Trooper Church moves the pen back and forth in front of Abaev's face a few more times. The footage shows no further deviations from the HGN test instructions beyond occasional slight head movement, though Abaev's eyes are not always visible.

{¶8} Defense counsel asked the trial court to suppress the results of the HGN test. Counsel asserted that he demonstrated through cross-examination that Google Translate does not provide an accurate translation, and Trooper Church did not ask the "precheck questions," so the test was not performed in substantial compliance with

NHTSA standards. Counsel asserted that without the test results, there was not probable cause to arrest, so any evidence that flowed from the arrest, including the breath test, should be suppressed.

{¶9} The trial court denied the motion to suppress. The court found that Trooper Church administered the HGN test in substantial compliance with NHTSA standards. The court found Trooper Church did not deviate from NHTSA standards in any significant way. The court noted Abaev had raised the issue of the propriety of the translation of the test instructions. However, the court explained it "reviewed the body camera audio/video of the instructions and administration of the HGN" test and "did not see any indications of improprieties. It appeared consistent with other properly administered HGN tests." The court found probable cause for the arrest based on: (1) Abaev's driving; (2) his bloodshot, glassy eyes; (3) "the strong odor of alcohol or alcoholic beverage emanating from [his] person"; (4) his admission to drinking alcohol; and (5) the clues observed on the HGN test. However, the court stated that even if it had suppressed the HGN test, there would still be probable cause. Subsequently, Abaev pleaded no contest to one OVI charge, and the court accepted the plea, found him guilty, sentenced him, and dismissed the remaining charges.

{¶10} Abaev appealed and assigns the following error:

Error 1. The trial court erred in not suppressing the HGN test, because the trooper's use of Google Translate to instruct Abaev was not reliable. The HGN test also did not comply with NHTSA standards. Without that test, the trooper had no probable cause to arrest Abaev. The fruit of the poisonous tree doctrine applies.

LAW AND ANALYSIS

**{¶11}** In his sole assignment of error, Abaev contends the trial court erred by not suppressing the HGN test because Trooper Church's use of Google Translate to instruct him was not reliable, and the test did not comply with NHTSA standards. Abaev asserts that an officer's reliance on Google Translate to question a motorist is generally allowable if the State offers testimony to verify the translation's accuracy. Abaev claims the State did not provide proof that Google Translate was reliable when Trooper Church used it to question him and instruct him on the HGN test, so the trial court should not have deemed the instructions on the HGN test valid. Abaev also asserts that Trooper Church failed to ask him any medical questions related to his ability to pass the test, so Trooper Church did not perform the test in substantial compliance with NHTSA standards. And Abaev maintains that without the results of the HGN test, there was not probable cause to arrest him, so any evidence which flowed from his arrest, like the breath test result, should have also been suppressed.

**{¶12}** "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The Supreme Court of Ohio has stated:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

**{¶13}** The admissibility of results of field sobriety tests is governed by R.C. 4511.19(D)(4)(b), which states:

> In any criminal prosecution . . . for a violation of division (A) or (B) of this section, . . . if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
>
> (i) The officer may testify concerning the results of the field sobriety test so administered.
>
> (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution . . . .
>
> (iii) . . . [I]f the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

**{¶14}** "In other words, the results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines." *Codeluppi* at ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Errors that are excusable under the substantial-compliance standard are characterized as 'minor procedural deviations.'" *State v. Parks*, 2013-Ohio-2492, ¶ 17 (5th Dist.), quoting

*Burnside* at ¶ 34, citing *State v. Homan*, 89 Ohio St.3d 421, 426 (2000), *superseded by statute on other grounds as recognized* in *State v. Boczar*, 2007-Ohio-1251.

{¶15} The State showed by clear and convincing evidence that Trooper Church administered the HGN test in substantial compliance with NHTSA standards. The State introduced, and the trial court admitted into evidence, the NHTSA standards for the HGN test. Trooper Church testified that he gave the test instructions required by the NHTSA manual using Google Translate. It may have been preferable for the State to have an interpreter testify regarding the accuracy of the translated instructions. However, "it is axiomatic that circumstantial evidence and direct evidence carry the same weight." *State v. Shaw*, 2019-Ohio-1674, ¶ 36 (5th Dist.). Abaev's near perfect compliance with the instructions on the dash and body camera footage is circumstantial evidence of the accuracy of the translation. Trooper Church did correct Abaev for head movement once, but this occurred after Abaev had already demonstrated he understood the instructions by complying with them when Trooper Church initially moved the pen in front of his face. The footage shows no further deviation from the instructions after that correction beyond occasional slight head movement. Trooper Church did fail to ask any medical questions before administering the test, but this minor procedural deviation does not warrant suppression. Trooper Church testified that these questions do not change the mechanics of the test. He also testified that he performed the requisite checks for equal pupil size, resting nystagmus, and equal tracking in the eyes, and he performed the HGN test as he had been trained under the NHTSA manual. The footage from his dash and body cameras supports this testimony.

**{¶16}** Because the State showed by clear and convincing evidence that Trooper Church substantially complied with NHTSA standards, the trial court properly denied the motion to suppress the HGN test. Therefore, Abaev's assignment of error is overruled.

**{¶17}** The judgment of the Delaware Municipal Court is affirmed.

By: Hess, J.
Hoffman, P.J.
Smith, J. concur